## THE STORTIND.

## THE WAR POINTER.

(District Court, E. D. Virginia. April 9, 1920.)

Collision ⬤═53—Overtaking vessel held in fault.

> A collision at sea between the steamships Stortind and War Pointer each a member of a convoy moving eastward from the Virginia Capes, *held* due to the fault of the War Pointer, which at the time occupied the position of an overtaking vessel, and under article 24 of the International Rules (Comp. St. § 7898), was bound to keep out of the way, and also because she did not sooner navigate with reference to the presence of the Stortind, which was not reported by her lookout.

In Admiralty. Suit for collision by R. Erickson, master of the steamship Stortind against the steamship War Pointer, with cross-libel by Arthur W. Melling, master of the War Pointer. Decree for libelant.

Duncan & Mount, of New York City, and Baird & White, of Norfolk, Va., for the Stortind.

Hughes, Little & Seawell, of Norfolk, Va., for the War Pointer.

WADDILL, District Judge. The collision in this case occurred about 5 minutes past 12 o'clock on the morning of the 6th of July, 1918, between the Norwegian steamship Stortind, 300 feet long, 40 feet beam, 17 feet deep, 2,667 tons burden, and the British steamship War Pointer, 413 feet long, 52 feet beam, 28 feet deep, 7,400 tons burden, when about 50 or 60 miles outside of the Capes of Virginia. Each vessel was a member of a convoy consisting of some 40 ships, divided in 9 columns of vessels. The Stortind was the rear vessel in column No. 7, and the War Pointer the rear vessel in column No. 5. The collision was caused by the port bow of the Stortind coming in collision with the starboard side of the War Pointer, abaft of hatch No. 1. There are no suggestions of weather conditions that unfavorably affected the safe conduct of the fleet, and only the two ships involved here encountered trouble.

Just how the vessels came together is not free from difficulty in deciding. The Stortind insists that the War Pointer was the overtaking vessel, charged with the duty of avoiding the collision, and that that was the relation the ships occupied one to the other, is shown by the testimony of both vessels. This position is strongly controverted; the War Pointer's contention being that, upon observing the Stortind on her starboard, she gave two signals of her whistle, indicating her purpose to go to port, and away from the other vessel, and that, without replying, the Stortind crossed her course and ran into her. The Stortind claims not to have seen the War Pointer, because the latter was behind her; that she in all respects conformed to the proper rules of navigation the moment her presence was discovered; that the War Pointer failed to stop and reverse, as she should have done in the emergency, or otherwise navigated so as to have

avoided the collision, and, on the contrary, continued her course across that of the Stortind thereby bringing about the disaster. The War Pointer further insists that the proper maneuver was to starboard as she did; that to have reversed her engines would have thrown her bow to starboard, crushing into the Stortind.

The difficulty and closeness of this case become more apparent as one studies it. The War Pointer insists that it is simply one in which she and the Stortind were running on parallel courses in close proximity to each other, and that the latter ship, under a starboard helm, suddenly changed her course across the War Pointer's bow, and brought about the collision. There is much to sustain this view though it ought not to be accepted unless there is no other reasonable way to account for the collision, as it places the Stortind in the position of navigating in an absurdly foolish, unseamanlike, and reckless manner, which is improbable, and has been aptly characterized by admiralty judges as the "stereotyped defense" in this class of cases. It does look, however, as if this collision occurred solely as the result of the negligence of one of the vessels, and was not brought about by their concurring fault, save as to matters which should be treated as error in extremis.

The Stortind's contention that the War Pointer was an overtaking vessel, if established, readily accounts for the collision. The court is inclined to the view, taking the whole testimony from the ships involved, and other vessels in the convoy, particularly the Potomac, that the War Pointer was in fact an overtaking vessel. International Rule of Navigation No. 24 (Comp. St. § 7898) is as follows:

"Art. 24. Notwithstanding anything contained in these rules, every vessel, overtaking any other shall keep out of the way of the overtaken vessel.

"Every vessel coming up with another vessel from any direction more than two points abaft her beam, that is, in such a position, with reference to the vessel which she is overtaking, that at night she would be unable to see either of that vessel's side lights, shall be deemed to be an overtaking vessel; and no subsequent alteration of the bearing between the two vessels shall make the overtaking vessel a crossing vessel within the meaning of these rules, or relieve her of the duty of keeping clear of the overtaken vessel until she is finally past and clear.

"As by day the overtaking vessel cannot always know with certainty whether she is forward of or abaft this direction from the other vessel she should, if in doubt, assume that she is an overtaking vessel and keep out of the way."

The War Pointer was certainly the rear vessel in the convoy. The court's judgment is that the collision was brought about by the failure of the navigators of the vessels to appreciate their relative statuses and positions in the convoy and the rights and obligations they respectively owed to each other immediately preceding the happening of the accident. The Stortind was evidently navigating due eastward, if not slightly to the northward of east, and, treating the War Pointer as an overtaking vessel, it was her duty to keep her course and speed; whereas, the War Pointer considered that the two vessels were navigating with equal rights in the open space allotted them in the convoy column, and, failing to appreciate that the vessel in the

sixth column properly between the two ships in collision, had moved ahead, leaving an open space between them, navigated entirely regardless of any obligation to look out for the Stortind, depending upon that ship to take care of herself. This was clearly a fault, treating the War Pointer as an overtaking vessel. She should, under the circumstances, not only have avoided the collision, but the risk of collision, with the Stortind.

The navigators of the War Pointer were, moreover, at fault, whether she be treated as an overtaking vessel or not, for failure sooner to navigate with reference to the presence of the Stortind on her starboard. It is quite evident, from the whole testimony, that what was done in respect to the two vessels avoiding the collision was not done until they were in such close proximity as to make an error on the part of either of them error in extremis, when the fact was, as shown by the War Pointer's lookout on duty prior to 12 o'clock, as well as the one coming on at that time, that they both saw, and neither reported the Stortind; the new lookout claiming that he failed in his duty in this respect because he assumed that the lookout whose place he had taken and who called his attention to the Stortind to starboard, had performed the service. The testimony of the latter is that he did not do so. This failure on the part of the lookouts cannot be overlooked, and was sufficient in itself to account for the accident. The suggestion that it is immaterial here that the master was directing the movements of the ship, and observed the Stortind, will not answer, as the trouble arose from the failure earlier to report her, and thereby make her presence sooner known, so that the navigation could have been directed to avoid collision with her.

The War Pointer insists that the above conclusions cannot be correct as shown by the lick of the collision, and from the course the Stortind insists she was on, namely, north of east, when the great weight of the testimony shows the true course to have been either east or south of east, which clearly indicates that she was crossing from her own place in the column to that of the War Pointer, and caused the collision. The latter view is not supported, in the court's judgment, by the testimony, though there is much confusion as to the exact course on which the vessels were proceeding. The proper course was evidently approximately due east.

It is difficult to ascertain how the collision happened, from the apparent injury to the vessels. While not infrequently the lick of a collision may and does throw most material light upon the cause of the accident, still reaching a conclusion from physical results is frequently, as in this case, an unsafe guide, as the exact manner in which the ships struck each other may have been influenced in part, if not almost entirely by what either vessel did in her effort to avoid collision at a time when it was too late to appreciably affect the same.

Much discussion was had as to the presence of lights on the tanker in the sixth column, and whether there was a light upon that vessel or not, or upon the commodore ship ahead, namely, the battle cruiser. It is not, perhaps, very material, but the court's conclusion

is that the light referred to by several witnesses was that of a light on the cruiser, and that there was no such light on the tanker. There seems to be no reason why this particular ship in the convoy should have had a light upon it. It would have greatly tended to confuse other vessels in the convoy, and was manifestly contrary to regulations under which the convoy was moving. ·

Upon the whole case, the court's conclusion is that the collision was brought about as a result of the fault of the War Pointer, and a decree will be entered on presentation, so ascertaining.